O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON BELIN, an individual,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>STARZ ENTERTAINMENT, LLC, a Colorado limited liability company; LIONS GATE ENTERTAINMENT INC., a Delaware corporation; CURTIS J. JACKSON III a/k/a 50 CENT, an individual; G-UNIT BRANDS, INC., a New York corporation; and G-UNIT FILM & TELEVISION, INC., a New York corporation,<br><br>　　　　　　　Defendants. | Case No.: CV 21-09586-FWS-PLA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT [30]** |

Before the court is Defendants Starz Entertainment, LLC ("Starz"), Lions Gate Entertainment, Inc. ("Lions Gate"), Curtis J. Jackson III, a/k/a 50 Cent ("Mr. Jackson"), G-Unit Brands, Inc. ("G-Unit Brands"), and G-Unit Film & Television, Inc.'s ("G-Unit Film") (collectively, "Defendants") Motion to Dismiss Plaintiff Byron Belin's ("Plaintiff" or "Mr. Belin") Complaint (Dkt. 30) ("Motion" or "Mot."). Plaintiff's Complaint (Dkt. 1) ("Complaint" or "Compl.") asserts common state and federal law trademark claims, in addition to claims under the Lanham Act, against Defendants based on allegations that Defendants are using Plaintiff's registered trademark "BMF" ("BMF Mark") in the title of Defendants' television series, "BMF: Black Mafia Family" ("Series") without Plaintiff's authorization or consent.

The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute"). Based on the state of the record, as applied to the applicable law, the court **GRANTS** the Motion and **DISMISSES WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** the Complaint.

I.  Background

    A.    Summary of Allegations

Plaintiff and his business partner are "engaged in a variety of entertainment media services including, but not limited to, the production of fiction and non-fiction television programming." (Compl. ¶ 9.) Plaintiff is the registered owner of the BMF Mark and "has marketed and sold services using" the BMF Mark "continuously since at least 2017, using platforms such as Facebook and YouTube, as well as other forms

of media." [1] (*Id.* ¶¶ 10, 12 & Exh. A.) Plaintiff alleges he "has expended considerable effort promoting and establishing name recognition" for the BMF Mark. (*Id.* ¶ 11.)

Plaintiff first "became aware" that Defendants intended to produce the Series, a television show "based on the story of [the] drug-trafficking organization, Black Mafia Family," in or around April 2020. (*Id.* ¶ 14; Mot. at 1 & Exh. A.) After Plaintiff sent Defendant Starz a letter in April 2020 offering to negotiate a license for the use of the BMF Mark, (*id.* ¶¶ 14-15,) Plaintiff alleges Defendant Starz "ceased using" the BMF Mark "when promoting the Series on social media," (*id.* ¶ 17). However, Plaintiff alleges he "became aware" around in or around April 2021 that Defendant Starz had "resumed" promoting the Series using the BMF Mark "on social media." (*Id.*)

The Series premiered on September 9, 2021, on Defendants Starz's and Lion Gate's media platforms. (*Id.* ¶ 19.) Plaintiff alleges that Defendants Lions Gate, Starz, G-Unit Films, and Mr. Jackson use the BMF Mark "in connection with the marketing and distribution of the Series," (*id.* ¶ 19,) and Defendant G-Unit Brands "has sold and is selling merchandise featuring" the BMF Mark, (*id.* ¶ 20). Plaintiff has not "authoriz[ed] or consent[ed]" to Defendants' use of the BMF Mark, (*id.* ¶ 14,) and alleges that Defendants' actions were "intentional" and "willful," (*id.* ¶¶ 30, 42, 49, 57, 66).

---

[1] The BMF Mark covers, among other categories of use, "[e]ntertainment media production services for motion pictures, television and Internet . . . ; entertainment services in the nature of organizing social entertainment events . . . ; entertainment services in the nature of presenting live musical performances . . . ; [and] entertainment services in the nature of fiction and non-fiction television programming series on topics relating to family stories, drug empires, gangs, organizing social entertainment, multimedia content, and day to day activities of self, friends, and family . . . ." (Compl., Exh. A.)

**B.     Procedural History**

Plaintiff filed the Complaint on December 10, 2021, bringing claims against Defendants under the Lanham Act for (1) trademark infringement; and (2) unfair competition and false designation of origin. (*See generally* Compl. ¶¶ 24-45.) The Complaint also includes claims against Defendants under federal and California state common law for: (1) contributory trademark infringement; (2) vicarious trademark infringement; and (3) trademark counterfeiting and false advertising. (*See generally id.* ¶¶ 46-68.) Defendants filed the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") on February 17, 2022, arguing that each of Plaintiff's claims is barred by the First Amendment under the test first articulated by the Second Circuit in *Rogers v. Grimaldi*, 875 F2.d 994 (2d. Cir. 1989) and adopted by the Ninth Circuit in *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ("*Rogers* test"). (Dkt. 30.) Defendants also request the court consider several exhibits attached to the Motion under the incorporation by reference doctrine and/or judicial notice. (*Id.*). Plaintiff filed an Opposition to the Motion (Dkt. 34) ("Opposition" or "Opp.") and attached Objections to Defendants' requests for judicial notice (Dkt. 34-1) on March 12, 2022.[2] Defendants filed a Reply (Dkt. 35) on March

---

[2] Plaintiff objected to Defendants' requests for judicial notice in a filing attached to the Opposition (Dkt. 34-1.) Plaintiff also filed a similar set of "Objections" after briefing in this matter had concluded and the Motion was first taken under submission, asserting that Defendants incorrectly submitted evidence attached to their Reply. (*See* Dkt. 37.) Though Plaintiff is theoretically correct that the court need not consider arguments raised for the first time in a Reply, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), Defendants did not submit new evidence or raise novel arguments as to judicial notice or incorporation by reference in the Reply, see *Markson v. CRST Int'l, Inc.*, 2022 WL 790960, at *1 n.1 (C.D. Cal. Feb. 24, 2022) (noting evidence "submitted with a reply brief is not new evidence when it is submitted to rebut arguments raised in the opposition brief") (citation and internal quotation marks omitted). Additionally, the court need not consider arguments raised in sur-replies filed without first seeking leave of court. *See Baxter Bailey & Assocs. v.*

18, 2022. Plaintiff has not previously filed an amended complaint in this action nor sought leave from the court to do so.

## II. Legal Standard

### A. Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action" such that the factual allegations "raise a right to relief above the speculative level." *Id.* at 555 (citations and internal quotation marks omitted); *see also Aschroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reiterating that "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

"Establishing the plausibility of a complaint's allegations is a two-step process that is 'context-specific' and 'requires the reviewing court to draw on its judicial experience and common sense.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679). "First, to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202,

---

*Ready Pac Foods, Inc.*, 2020 WL 3107889, at *1 (C.D. Cal. Feb. 14, 2020) ("When a reply does not present new arguments nor new evidence, a surreply is improper and a court should not grant leave to file one.") (citation and internal quotation marks omitted); *see also* L.R. 7-10 ("Absent prior written order of the Court, the opposing party shall not file a response to the reply.").

1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.* (quoting *Baca*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681. But "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 at U.S. 678).

## III. DISCUSSION

### A. Judicial Notice and Incorporation by Reference

#### 1. <u>Legal Standards</u>

The court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b). Courts cannot take judicial notice of facts subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Twombly*, 550 U.S. at 555 n.11 ("Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.") (internal quotation marks omitted).

For example, "courts routinely take judicial notice of letters published by the government . . . as well as records and reports of administrative bodies." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (citations and internal quotation marks omitted). Additionally, courts "may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment," if the material

is "physically attached to the complaint." *Lee*, 250 F.3d at 688 (citations and internal quotation marks omitted).

The "incorporation by reference" doctrine permits courts to "take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted) (alteration in original); *see also Lee*, 250 F.3d at 688. Application of the incorporation by reference doctrine may be appropriate in "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel*, 393 F.3d at 1076.

2. Application

Defendants request the court incorporate by reference and/or take judicial notice of several exhibits attached to the Motion: (1) two promotional photographs from the Series (Dkt. 30-1, Declaration of Kevin M. Bell ("Bell Decl."), Exh. A); (2) a photograph from the Wikipedia article, "Black Mafia Family" and an article from The Detroit News, "Black Mafia Family leader 'Big Meech' gets prison break in Detroit drug case" (Bell Decl., Exh. B); (3) a Petition for Cancellation of the BMF Mark filed before the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board by a nonparty to this litigation (Bell Decl., Exh. C.); and (4) five pieces of correspondence between Plaintiff and Defendants (Bell Decl., Exhs. D-H). Plaintiff objects to the court considering each of these materials. (Opp. 19-21; Dkt. 34-1.)[3]

Defendants contend Exhibit A should be incorporated by reference because the Complaint omits "Defendants' actual alleged use, and the context for" the Series, as

---

[3] Page numbers for the Opposition correspond to the pagination of the PDF document as filed with the court.

well as "evidence of Defendants' actual promotion of the [S]eries and the context for the logo depicted." (Mot. at 8.) The crux of Plaintiff's claims concern Defendants' allegedly infringing use of the BMF Mark; Exhibit A is promotional artwork for the Series and offered as an example of Defendants' use of the BMF Mark. Accordingly, the court will consider Exhibit A under the incorporation by reference doctrine because Plaintiff's claims depend on Defendants' use of the BMF Mark. *See Knievel*, 1076-77 (9th Cir. 2005) (incorporating by reference the web pages "surrounding" the "photograph and caption that [plaintiffs] argue[d] was defamatory"); *accord Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Defendants request the court consider Exhibit B, an "article discussing the history of the Black Mafia Family and the Wikipedia photo for the real-life family showing historical use of 'BMF' as a logo," (Mot. at 8,) for "the same reason," e.g., incorporation by reference, (Reply at 12). Though the subject matter of the Series may potentially be related to Exhibit B, the arguments presented by the parties are limited to Defendants' use of the BMF Mark and whether that use is misleading as to Plaintiff under the *Rogers* test. The Complaint only briefly mentions the Series is "based on the story of drug-trafficking organization," which is not enough for the court to consider Exhibit B under the incorporation by reference doctrine. *See Khoja*, 899 F.3d at 1002 (noting incorporation by reference is appropriate where "'the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'") (quoting *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted) ("[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document.").

It is not clear to the court the permissible purpose for which Defendants seek judicial notice of Exhibit C, the Petition for Cancellation. A court may take judicial notice of administrative records, including petitions filed in the U.S. Patent and Trademark Office. *See Caiz v. Roberts*, 382 F. Supp. 3d 942, 947 (C.D. Cal. 2019)

(taking judicial notice of "file history" filed in the U.S. Patent and Trademark Office). However, Exhibit C is not sufficiently relevant to the arguments at issue in the Motion, which focus only on the application of the *Rogers* test. Accordingly, the court declines to take judicial notice of Exhibit C. *See Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1026, 1029-30 (C.D. Cal. 2015) (declining to take judicial notice of documents irrelevant to motion to dismiss).

Exhibits D-H are printouts of pre-suit correspondence, which Defendants argue should be considered by the court because "the Complaint includes specific reference to the parties' pre-suit correspondence." (Mot. at 8.) The correspondence does not relate to the basis of Plaintiff's claims—that Defendants' use of the BMF Mark violates Plaintiff's trademark rights—and thus the Complaint does not "depend" on the correspondence sufficiently to warrant their incorporation by reference. *See Khoja*, 899 F.3d at 1002; *Coto Settlement*, 593 F.3d at 1038.

### B. First Amendment (*Rogers* Test)

Defendants argue that each of Plaintiff's claims are barred by the First Amendment, under the *Rogers* test set forth in *Rogers*, 875 F.2d 994 and first employed by the Ninth Circuit in *MCA Records*, 296 F.3d 894. While claims of trademark infringement under the Lanham Act are generally governed by a likelihood-of-confusion test, courts in the Ninth Circuit apply the *Rogers* test when the alleged infringement concerns an expressive work to accommodate First Amendment interests. *See MCA Records*, 296 F.3d at 900, 902. To balance the public's interest in avoiding consumer confusion with First Amendment protections of free expression, courts "apply the [Lanham] Act to an expressive work only if the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018) (citing *MCA Records*, 296 F.3d at 902).

"The *Rogers* test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First

Amendment." *Id.* The burden then shifts to the plaintiff to show "(1) that it has a valid, protectable trademark, and (2) that the mark is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work." *Id.* at 265. "If the plaintiff satisfies both elements," the plaintiff "must still prove that [their] trademark has been infringed by showing that the defendant's use of the mark is likely to cause confusion." *Id.* at 265. The Ninth Circuit has affirmed the application of the *Rogers* test's burden-shifting framework at the motion to dismiss stage. *See Betty's Found. for Elimination of Alzheimers Disease v. Trinity Christian Ctr. of Santa Ana, Inc.*, 2022 WL 807391, at *1 (9th Cir. Mar. 16, 2022).

For the purposes of this motion, the parties do not meaningfully dispute the validity of Plaintiff's BMF Mark.[4] Plaintiff has also attached a copy of the registration for the BMF Mark to the Complaint, (Compl., Exh. A,) which "'constitutes "prima facie evidence"'" of the BMF Mark's validity. *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1236 (9th Cir. 2022) (first quoting *Iancu v. Brunetti*, 139 S.Ct. 2294, 2297 (2019) (quoting 15 U.S.C. § 1115(a))). Plaintiff also brings several common federal and state law claims, which Defendants argue are subject to the *Rogers* test; Plaintiff does not dispute this.[5]

---

[4] Defendants note they "dispute the legitimacy of any alleged rights that Plaintiff claims in 'BMF' as a trademark," (Mot. at 1,) but do not set forth substantive legal argument in the Motion to support this contention.

[5] As was the case in *Twentieth Century Fox Television v. Empire Distribution, Inc.*, the court "ha[s] no occasion to address whether the *Rogers* test applies to any state laws." 875 F.3d 1192, 1196 n.1 (9th Cir. 2017). As Defendants note, the Ninth Circuit in *MCA Records* held the district court properly granted summary judgment where the "likelihood-of-confusion test also govern[ed] [defendant's] state law claims of unfair competition." 296 F.3d 894, 902 n.2. In *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, the Ninth Circuit similarly held that "the First Amendment defense applies equally to ESS's [California] state law claims [of unfair competition and trademark infringement] as to its Lanham Act claim." 547 F.3d 1095, 1100 (9th Cir. 2008). Finally, the Ninth Circuit in *Dr. Seuss Enters., L.P. v. ComicMix LLC* held

1. Expressive Work

The parties do not dispute the Series is an expressive work, and the court agrees. *See Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (determining a "television show itself is clearly an expressive work"). Plaintiff argues, however, "the sale of consumer products bearing" the BMF Mark is a "separate category of infringement" that Defendants have not adequately shown "should be afforded free speech protection." (Opp. at 14.) This argument was rejected by the Ninth Circuit in *Twentieth Century Fox*.[6] *See* 875 F.3d 1196-97 ("Although it is true that these promotional efforts technically fall outside the title or body of an expressive work, it requires only a minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name."). As the Ninth Circuit noted, "the *Rogers* case itself concerned both a movie with an allegedly infringing title and its advertising and promotion" and "[t]he balance of First Amendment interests struck in *Rogers* and *Mattel* [*v. MCA Records*] could be destabilized if the titles of expressive works were protected but could not be used to promote those works." *Id.* at 1197. Accordingly, the court finds Defendants have shown the Series and the promotional and marketing materials related to it, including consumer merchandise, are "expressive works" under the *Rogers* test. The court now considers whether Defendants' use of the BMF Mark "is either not artistically relevant to the underlying work or explicitly misleading as to the source or content of the work." *Gordon*, 909 F.3d at 265.

---

plaintiff's common law trademark infringement claims failed as a matter of law under the *Rogers* test. 983 F.3d 443, 461 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2803 (2021). Considering this authority and because the parties do not separately address Plaintiff's common law claims, the court considers all of Plaintiff's claims together in its analysis.

[6] Both parties cite *Twentieth Century Fox* as binding precedent on the court's determination of what constitutes an expressive work. (Mot. at 10-11; Opp. at 14.)

2. <u>Artistic Relevance</u>

"As to the first prong, any artistic relevance 'above zero' means the Lanham Act does not apply unless the use of the trademark is explicitly misleading." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 2803 (2021). "Trademarks that 'transcend their identifying purpose,' are more likely to be used in artistically relevant ways." *Twentieth Century Fox*, 875 F.3d at 1198 (quoting *MCA Records*, 296 F.3d at 900). Conversely, "[a] mark that has no meaning beyond its source-identifying function is more likely to be used in a way that has 'no artistic relevance to the underlying work whatsoever' because the work may be 'merely borrow[ing] another's property to get attention.'" *Id.* (first quoting *MCA Records*, 296 F.3d at 901-02 (quoting *Rogers*, 875 F.2d at 999)).

The Complaint alleges Defendants use the BMF Mark to abbreviate the term "Black Mafia Family" in the title of the Series, which concerns a drug-trafficking organization. Although the court refrains from determining the artistic relevance of the BMF Mark in the Series at this stage, nothing "in [P]laintiff's allegations [] suggest that the mark, itself, is the centerpiece of the [Series] or that, like the unadorned use of the 'Honey Badger' marks in *Gordon*, [D]efendants used the mark without adding any artistic expression of their own." *See Deus ex Machina Motorcycles Pty. Ltd. v. Metro-Goldwyn-Mayer Inc.*, 2020 WL 6875178, at *7 (C.D. Cal. Oct. 23, 2020) (citing *Gordon*, 909 F.3d at 270-71). And the Ninth Circuit has held use similar to the Complaint's allegations of Defendants' use is artistically relevant. *Twentieth Century Fox*, 875 F.3d at 1198 (using word "Empire" in television show's title where its "subject matter" was a "conglomerate, 'Empire Enterprises'" was "artistically relevant"). Therefore, Defendants' use of the BMF Mark must "explicitly mislead[] consumers as to the source or the content" of the Series for Plaintiff's claims to remain viable at this stage. *See Gordon*, 909 F.3d at 264.

### 3.     Explicitly Misleading

Even where the use of a trademark is artistically relevant to an expressive work, the creator of the expressive work can be still be liable for infringement under the Lanham Act if the creator uses the mark or material to 'explicitly mislead[] [consumers] as to the source or the content of the work.'" *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Rogers*, 875 F.2d at 999) (alteration in original). "The relevant question, therefore, is whether the [Series] would confuse its [viewers] into thinking that [Plaintiff] is somehow behind the [Series] or that [Plaintiff] sponsors [the Series]." *See E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008).  This prong "is a high bar that requires the use to be an explicit indication, overt claim, or explicit misstatement about the source of the work." *Dr. Seuss Enters.*, 983 F.3d at 462 (citation and internal quotation marks omitted).  And "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." *Id.* (citing *MCA Records*, 296 F.3d at 302).

Defendants argue that the Series includes no explicit statements or claims suggesting Plaintiff's involvement, but notes Defendants use "BMF" as the Series' "shortened-title." (*See* Mot. at 1, 8, 13.)  Plaintiff's allegations are limited to Defendants' use of the BMF Mark in the Series and in connection with related marketing and promotional merchandise. (Compl. ¶¶ 14, 19, 20.)  As such, the Complaint insufficiently alleges an "explicit indication, overt claim, or explicit misstatement" linking Plaintiff to the Series. *See Davis v. Amazon.com, Inc.*, 2022 WL 2062373, at *5 (C.D. Cal. Jan. 3, 2022) (finding allegations that defendants' film (1) "had the 'same title'" and "'thematic elements'" as plaintiff's book; (2) used font "'very similar'" to plaintiff's book; and (3) was available to watch on the same website selling plaintiff's book insufficient to "amount to an 'explicit indication, overt claim, or explicit misstatement' that the source of [defendant's] [f]ilm was [p]laintiffs' book").

Where "consumers would expect the use of a mark alone to identify the source," *Gordon*, 909 F.3d at 270 (emphasis removed), courts weigh "two 'more relevant consideration[s]' . . . in evaluating whether the mark is explicitly misleading: (1) 'the degree to which the junior user uses the mark in the same way as the senior user' and (2) 'the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself.'" *Dr. Seuss Enters.*, 983 F.3d at 462 (quoting *Gordon*, 909 F.3d at 270-71) (first alteration in original). Even assuming the factors set forth in *Gordon* apply to this case as Plaintiff argues, (see Opp. at 14-18,) the Complaint's allegations do not sufficiently demonstrate that the factors weigh in favor of Plaintiff. *See Gordon* 909 F.3d at 268 (noting *Gordon* "demonstrate[ed] *Roger's* outer limits.").

                i.    Degree to Which Defendants Use the BMF Mark in the Same Way as Plaintiff

Where "the senior user and junior user use[] the mark in different ways," this "disparate use of the mark [i]s at most 'only suggestive' of the product's source and therefore d[oes] not outweigh the junior user's First Amendment interests." *Gordon*, 909 F.3d at 270. But "identical usage could reflect the type of 'explicitly misleading description' of source that *Rogers* condemns." *Id.* (quoting *Rogers*, 875 F.2d at 999-1000).

Plaintiff argues that "Plaintiff's protectible BMF [M]ark is not only similar, but identical, to the 'BMF' acronym used by Defendants as the shortened title of their [] Series" and "the Complaint plainly alleges a highly similar use of 'BMF' to that claimed by Defendants." (Opp. at 16.) The allegations in the Complaint that concern Plaintiff's use of the BMF Mark in commerce are that Plaintiff has "marketed and sold services using the trademark 'BMF'" and "expended considerable effort promoting and establishing name recognition for his 'BMF' trademark." (*See* Compl. ¶¶ 10-11.) Even if Defendants' use of the BMF Mark is similar to the uses for which Plaintiff's trademark is registered, as alleged in the Complaint, Plaintiff does not plausibly allege

that Defendants are *using* the BMF Mark in an explicitly misleading manner. *See Dr. Seuss Enters.*, 983 F.3d at 463 (holding "alleged use of Seuss's trademarks [wa]s not explicitly misleading" even though defendant "ha[d] used the marks in an illustrated book just as Seuss did" where there was no indication of Seuss's association with defendant's work and defendant added its own expressive content to the work beyond the mark itself); *see also Caiz*, 382 F. Supp. 3d at 950-51 (rejecting the "legal argument" that defendants' use of plaintiff's mark registered for "the exact same goods and services for which [d]efendants use the mark" was explicitly misleading because "even where the mark [wa]s used, it [wa]s through [defendant's] own artistic expression" and the associated "marketing" of the product using plaintiff's mark "attache[d]" to defendant's "persona and history").

Plaintiff argues a footnote from *Rogers*,[7] which stated the test's "limiting construction would not apply to 'misleading titles that are confusingly similar to other titles'" supports finding Defendants' use is explicitly misleading. (Opp. at 15-18 (citing *Gordon*, 909 F.3d at 270 (quoting *Rogers*, 875 F.2d at 999 n.5)).) But the Complaint does not allege Plaintiff uses the BMF Mark as a title in any of his works, and the court cannot infer the Series uses the mark in an "explicitly misleading" manner based on the Complaint's conclusory allegations that Plaintiff is "engaged in a

---

[7] Though this footnote is referenced in *Gordon*, the Ninth Circuit has questioned its application. *See Twentieth Century Fox*, 875 F.3d at 1197 ("The exception the footnote suggests may be ill-advised or unnecessary: identifying 'misleading titles that are confusingly similar to other titles' has the potential to duplicate either the likelihood-of-confusion test or the second prong of *Rogers*, which asks whether a title 'explicitly misleads as to the source or the content of the work.'") (citation omitted). Indeed, the Ninth Circuit in *Gordon* described this footnote as "noting that 'misleading titles that are confusingly similar *to other titles*' *can be* explicitly misleading, regardless of artistic relevance," not that such instances *will be* by default. *Gordon*, 909 F.3d at 270 (quoting *Rogers*, 875 F.2d at 999 n.5) (second emphasis added).

variety of entertainment media services" and has "marketed" and "sold services using" the BMF Mark.

For the same reason, *Rebelution, LLC v. Perez*, in which the court held the title of singer Pitbull's record, "Pitbull Starring in Rebelution" was misleading as to the band Rebelution's trademarked name, is inapposite. 732 F. Supp. 2d 883, 888 (N.D. Cal. 2010). In *Perez*, the court held the *Rogers* test was "inapplicable" where "neither the word ['rebelution'] nor the mark" had "taken on an expressive meaning apart from its source-identifying function," *id.* (citing *MCA Records*, 296 F.3d at 900), and alternatively held defendants failed to show "they used plaintiff's mark to refer to the meaning associated with plaintiff's mark," *id.* at 889.[8] By contrast, the BMF Mark in the Series is used in the title of the Series as an acronym for the "Black Mafia Family," its subject. Regardless of the similarities between Defendants' use of the BMF Mark and Plaintiff's registration of it, the court finds the Complaint does not sufficiently and plausibly allege the ways in which Plaintiff uses the BMF Mark to demonstrate Defendants' use is explicitly misleading.

      ii. *Extent to Which Defendants have Added Their own Expressive Content to the Series Beyond the BMF Mark Itself*

In considering whether a junior user has added their own expressive content beyond a trademark itself, "the concern that consumers will not be 'misled as to the source of [a] product' is generally allayed when the mark is used as only one

---

[8] Even if *Perez* were applicable here, courts in the Ninth Circuit have expressed doubt as to its soundness. *See, e.g.*, *VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*, 2015 WL 5000102, at *9 (N.D. Cal. Aug. 21, 2015) ("[T]he *Rogers* test applies to cultural icons—such as the Barbie doll at issue in *MCA Records*—but is not limited to them."), *aff'd*, 699 F. App'x 667 (9th Cir. 2017); *Twentieth Century Fox Television v. Empire Dist. Inc.*, 161 F. Supp. 3d 902, 907 (C.D. Cal. 2016) ("[T]he [*Perez*] court has been criticized for misapplying the *Rogers* test."), *aff'd sub nom. Twentieth Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192 (9th Cir. 2017).

1  component of a junior user's larger expressive creation, such that the use of the mark
2  at most 'implicitly suggest[s]' that the product is associated with the mark's owner."
3  *Gordon*, 909 F.3d at 270-71 (alteration in original).  "But using a mark as the
4  centerpiece of an expressive work itself, unadorned with any artistic contribution by
5  the junior user, may reflect nothing more than an effort to 'induce the sale of goods or
6  services' by confusion or 'lessen[] the distinctiveness and thus the commercial value
7  of' a competitor's mark." *Id.* at 271 (quoting *S.F. Arts & Athletics, Inc. v. U.S.
8  Olympic Comm.*, 483 U.S. 522, 539 (1987)) (alteration in original).
9         Plaintiff argues that "Defendants fail to articulate how their glossy production
10 of the [] Series using" the BMF Mark "as the title has added expressive content
11 beyond the BMF [M]ark itself." (Opp. at 17 (emphasis removed).)  The court
12 disagrees.  Plaintiff does not contest that Defendants' use of the BMF Mark as part of
13 the title of the Series, which is more broadly about "the dramatiz[ation] and
14 recount[ing] [of] the story of the Black Mafia Family and those involved." (Mot. at
15 15; *See* Opp. at 17.)  Based on this and considering the court's analysis above,
16 Defendants have added their own expressive content to the Series beyond using the
17 BMF Mark in its title.  *See Betty's Found. for Elimination of Alzheimer's Disease v.
18 Trinity Christian Ctr. of Santa Ana, Inc.,* 2021 WL 3046889, at *4 (C.D. Cal. Apr. 7,
19 2021), *aff'd*, 2022 WL 807391 (9th Cir. Mar. 16, 2022) ("The Ninth Circuit stated in
20 *Gordon* that when a mark is used as "the title of an expressive work—such as the title
21 of a movie, a song, a photograph, or a television show—the mark obviously serve[s]
22 as only one element of the [work] and the [junior user's] artistic expressions.")
23 (quoting *Gordon*, 909 F.3d at 271) (alterations in original); *Deus ex Machina*, 2020
24 WL 6875178, at *6 (finding "defendants have added their own expressive content to
25 the [movie] beyond the mark itself" where the "mark play[ed] only a part in [the]
26 movie").
27        Based on the plausibly pleaded allegations in the Complaint, Plaintiff
28 essentially asks the court to find Defendants use the BMF Mark in the Series' title

1  defeats the application of the *Rogers* test.  That conception seems to defeat the
2  purpose of the *Rogers* test itself.  *See Dickinson v. Ryan Seacrest Enters. Inc.,* 839 F.
3  App'x 110, 111 (9th Cir. 2020), *cert. denied sub nom. Dickinson v. Ryan Seacrest*
4  *Prods., Inc.*, 141 S. Ct. 2861 (2021) ("To succeed under the *Rogers* test, the 'creator's
5  use of the mark [must be] explicitly misleading as to *source or content*.'") (quoting
6  *Gordon*, 909 F.3d at 269) (alteration in original).

       C.      **Leave to Amend**

"A party may amend its pleading once as a matter of course within: [(1)] 21 days after serving it, or [(2)] if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases," pleadings may only be amended with the opposing party's written consent or the court's leave, the latter of which is "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In assessing whether leave to amend is proper, courts consider the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 814-15 (9th Cir. 2020) (citation and internal quotation marks omitted).  Courts may find amendment futile where "no amendment would allow the complaint to withstand dismissal as a matter of law," and "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Id.* at 815 (citation and internal quotation marks omitted).  But "[i]f a complaint does not state a plausible claim for relief, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340 (9th Cir. 2020) (citation and internal quotation marks omitted).

The court finds the record does not support a finding of any instances of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, [or] undue prejudice to the opposing party." *See Kroessler*, 977 F.3d at 814-15 (9th Cir. 2020) (citation and internal quotation marks omitted). Plaintiff has not previously amended the Complaint, and the court freely gives leave to amend consistent with Rule 15. Thus, the court does not find the Compliant allegations dismissed by this Order are futile. Accordingly, the court affords Plaintiff leave to amend Plaintiff's claims dismissed without prejudice by this Order.

## IV. DISPOSITION

The Complaint's plausibly pleaded allegations do not provide a sufficient basis for the court to conclude that Defendants' use is "explicitly misleading" within the meaning of the *Rogers* test. For that reason, the court **GRANTS** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** the Complaint. Should Plaintiff desire to file an amended complaint that addresses the issues in this ruling, Plaintiff must file and serve it within thirty (30) days of service of notice of this ruling.

**IT IS SO ORDERED.**

DATED: June 17, 2022

HONORABLE FRED W. SLAUGHTER
UNITED STATES DISTRICT JUDGE