1

2

3

4

5

6

7

JS-6

8        **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10

11    BYRON BELIN, an individual,

Case No. 2:21-cv-09586-FWS-PLA

12                                    Plaintiff,

**ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S**
**SECOND AMENDED COMPLAINT**
**[59]**

13            v.

14

15    STARZ ENTERTAINMENT, LLC, a
Colorado limited liability company;

16    LIONS GATE ENTERTAINMENT
INC., a Delaware corporation; CURTIS

17    J. JACKSON III a/k/a 50 CENT, an
individual; G-UNIT BRANDS, INC., a

18    New York corporation; and G-UNIT
FILM & TELEVISION, INC., a New

19    York corporation,

20

21                                    Defendants.

22

23

24

25

26

27

28

Before the court is Defendants Starz Entertainment, LLC ("Starz"), Lions Gate Entertainment, Inc. ("Lions Gate"), Curtis J. Jackson III, a/k/a 50 Cent ("Mr. Jackson"), G-Unit Brands, Inc. ("G-Unit Brands"), and G-Unit Film & Television, Inc.'s ("G-Unit Film") (collectively, "Defendants") Motion to Dismiss Plaintiff Byron Belin's ("Mr. Belin" or "Plaintiff") Second Amended Complaint ("SAC"). (Dkt. 59 ("Motion" or "Mot.").) The matter is fully briefed. (*See* Dkts. 61 ("Opposition" or "Opp."), 62 ("Reply").) Based on the state of the record, as applied to the applicable law, the court **GRANTS** the Motion and **DISMISSES WITH PREJUDICE** the SAC.

## I.    Relevant Background

The SAC alleges[1] Plaintiff and his business partner "are engaged in a variety of entertainment media and other services" and actively use the registered trademark for the letters "BMF" ("BMF Mark") in connection with their YouTube series entitled "BMF The Series" and enterprise "BMF Promotions." (Dkt. 58 ¶ 14.) Under BMF Promotions, Plaintiff and his business partner promote "amateur boxers and MMA fighters, music, television production, music, sports/exhibitions, live stage performances, film, and online gaming." (*Id.*) They also maintain a Facebook page and "group devoted to building a community related to these same categories, also under the BMF Mark." (*Id.*) Plaintiff is the registered owner of the BMF Mark and "has continuously marketed and sold services using" the BMF Mark "since at least 2017, using platforms such as Facebook and YouTube." (*Id.* ¶¶ 15, 22 & Exh. A.)

Plaintiff's "BMF Mark [] stands for 'Building Money First,'" though Plaintiff also uses it as a standalone acronym without its full title. (*Id.*) The SAC sets forth relevant examples of Plaintiff's uses of the BMF Mark. Most notably, Plaintiff's

---

[1] For the purposes of the Motion, the court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"BMF The Series" features a "storyline based on [Plaintiff's] and his cohorts' real life experiences building a drug empire during the late 1980s-1990s." (*Id.* ¶ 16.) Additionally, Plaintiff is licensed in Texas and Arkansas to use "BMF Promotions" in connection with promotional activities of combat sports, (*id.* ¶ 17); is "licensed under the BMF Mark as a certified kickboxing instructor and nutritionist through the International Sports Sciences Association (ISSA)"; and sells "T-shirts bearing the BMF Mark in connection with these activities," (*id.* ¶ 18). Plaintiff also uses the BMF Mark to rent music and video production equipment to third parties. (*Id.* ¶ 19.) Plaintiff alleges he "has expended considerable effort promoting and establishing name recognition" for the BMF Mark, through "extensive marketing and sales." (*Id.* ¶ 20.)

Plaintiff first became aware that Defendants intended to produce a television show titled "BMF: Black Mafia Family" ("Series") which would be "based on the story of [the] drug-trafficking organization, Black Mafia Family," in or around April 2020. (*Id.* ¶ 27; *see id.* ¶¶ 28-32.) Plaintiff alleges Defendants market Defendants' Series through various channels by using the BMF Mark without reference to the subtitle "Black Mafia Family," including via social media and through merchandise sales. (*Id.* ¶¶ 29-30, 36-37, 43, 45-47.)

The SAC asserts several claims under the Lanham Act, and federal and state trademark laws against Defendants for (1) trademark infringement; (2) unfair competition and false designation of origin; (3) contributory trademark infringement; (4) vicarious trademark infringement; and (5) trademark counterfeiting and false advertising. (*Id.* ¶¶ 59-93.) As was the case with their two previous successful motions to dismiss, Defendants again move to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), on the grounds that each of Plaintiff's claims is barred by the First Amendment under the test first articulated by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) and adopted by the Ninth Circuit in *Mattel,*

1   *Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002) ("*Rogers* test").  (*See*

2   *generally* Mot.)

3   **II.     Legal Standard**

4         **A.          Rule 12(b)(6) Motion to Dismiss**

5         Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to

6   state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[C]ourts

7   must consider the complaint in its entirety, as well as other sources courts ordinarily

8   examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents

9   incorporated into the complaint by reference, and matters of which a court may take

10  judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

11  To withstand a motion to dismiss brought under Rule 12(b)(6), a complaint must

12  allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.*

13  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  While "a complaint attacked by a Rule

14  12(b)(6) motion to dismiss does not need detailed factual allegations," a plaintiff must

15  provide "more than labels and conclusions" and "a formulaic recitation of the

16  elements of a cause of action" such that the factual allegations "raise a right to relief

17  above the speculative level."  *Id.* at 555 (citations and internal quotation marks

18  omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (reiterating that

19  "recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice").  "A Rule 12(b)(6) dismissal 'can be based on the lack of a

21  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

22  legal theory.'"  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir.

23  2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

24        "Establishing the plausibility of a complaint's allegations is a two-step process

25  that is 'context-specific' and 'requires the reviewing court to draw on its judicial

26  experience and common sense.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*,

27  751 F.3d 990, 995-96 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  "First, to be

28  entitled to the presumption of truth, allegations in a complaint . . . must contain

1    sufficient allegations of underlying facts to give fair notice and to enable the opposing

2    party to defend itself effectively." *Id.* at 996 (quoting *Starr v. Baca*, 652 F.3d 1202,

3    1216 (9th Cir. 2011)). "Second, the factual allegations that are taken as true must

4    plausibly suggest an entitlement to relief, such that it is not unfair to require the

5    opposing party to be subjected to the expense of discovery and continued litigation."

6    *Id.* (quoting *Starr*, 652 F.3d at 1216); *see also Iqbal*, 556 U.S. at 681.

7        Plausibility "is not akin to a 'probability requirement,' but it asks for more than

8    a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678

9    (quoting *Twombly*, 550 U.S. 544, 556 (2007)). On one hand, "[g]enerally, when a

10   plaintiff alleges facts consistent with both the plaintiff's and the defendant's

11   explanation, and both explanations are plausible, the plaintiff survives a motion to

12   dismiss under Rule 12(b)(6)." *In re Dynamic Random Access Memory (DRAM)*

13   *Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (citing *Starr*, 652

14   F.3d at 1216). But, on the other, "'[w]here a complaint pleads facts that are merely

15   consistent with a defendant's liability, it stops short of the line between possibility and

16   plausibility of entitlement to relief.'" *Eclectic Props. E., LLC*, 751 F.3d at 996

17   (quoting *Iqbal*, 556 at U.S. 678). Ultimately, a claim is facially plausible where "the

18   plaintiff pleads factual content that allows the court to draw the reasonable inference

19   that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678

20   (citing *Twombly*, 550 at 556); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136,

21   1140 (9th Cir. 2012).

22       In *Sprewell v. Golden State Warriors*, the Ninth Circuit described legal

23   standards for motions to dismiss made pursuant to Rule 12(b)(6):

24

25       Review is limited to the contents of the complaint. All allegations of
         material fact are taken as true and construed in the light most favorable to
26       the nonmoving party. The court need not, however, accept as true
         allegations that contradict matters properly subject to judicial notice or by
27       exhibit. Nor is the court required to accept as true allegations that are

28

-5-

merely conclusory, unwarranted deductions of fact, or unreasonable inferences.

266 F.3d 979, 988 (9th Cir. 2001) (citations omitted).

## III. DISCUSSION

### A. Whether Defendants' Use is Explicitly Misleading Under *Rogers*

Under *Rogers*, the Lanham Act only applies to expressive works if the plaintiff establishes "the defendant's use of the mark is either (1) 'not artistically relevant to the underlying work' or (2) 'explicitly misleads consumers as to the source or content of the work.'" *VIP Prods. LLC v. Jack Daniel's Props., Inc.*, 953 F.3d 1170, 1174 (9th Cir. 2020) (quoting *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 265 (9th Cir. 2018)). It is not reasonably disputed, and the court has previously found, that Defendants' Series is an expressive work. (Dkt. 50 at 11; *see* Dkt. 57 at 7.) *See also Twentieth Century Fox Television. v. Empire Distrib., Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017) (holding a "television show itself is clearly an expressive work" and that promotional and marketing efforts related to the show fall within the scope of the *Rogers* test); *Punchbowl, Inc. v. AJ Press, LLC*, 52 F.4th 1091, 1098 (9th Cir. 2022) ("Titles [] can be expressive in nature. Indeed, *Rogers* itself concerned the title of a movie.") (internal punctuation marks and citation omitted). It is further undisputed, as the court also previously found, that Defendants' use of the BMF Mark is artistically relevant to Defendants' Series. (Dkt. 57 at 7; *see* Dkt. 50 at 12.) *See also Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020) ("[A]ny artistic relevance 'above zero' means the Lanham Act does not apply unless the use of the trademark is explicitly misleading.") (citations omitted). Accordingly, as the parties have previously acknowledged, *Rogers* bars Plaintiff's claims unless Defendants' use of the BMF Mark is "explicitly misleading."

The "explicitly misleading" prong of *Rogers* "points directly at the purpose of trademark law, namely to 'avoid confusion in the marketplace by allowing a

1    trademark owner to prevent others from duping consumers into buying a product they

2    mistakenly believe is sponsored by the trademark owner.'" *Punchbowl*, 52 F.4th at

3    1100 (quoting *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100

4    (9th Cir. 2008) (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 806

5    (9th Cir. 2003))).  This "is a high bar that requires the use to be an explicit indication,

6    overt claim, or explicit misstatement about the source of the work." *Dr. Seuss Enters.*,

7    983 F.3d at 462 (citation and internal quotation marks omitted).

8        Because "the mere use of a trademark alone cannot suffice to make such use

9    explicitly misleading," *Gordon*, 909 F.3d at 270 (quoting *E.S.S. Ent.*, 547 F.3d at

10   1100), "two 'more relevant consideration[s]' weigh in evaluating whether the mark is

11   explicitly misleading: (1) 'the degree to which the junior user uses the mark in the

12   same way as the senior user' and (2) 'the extent to which the junior user has added his

13   or her own expressive content to the work beyond the mark itself,'" *Dr. Seuss Enters.*,

14   983 F.3d at 462 (alteration in original) (quoting *Gordon*, 909 F.3d at 270-71).  This is

15   not necessarily "'a mechanical test,' and 'all of the relevant facts and circumstances

16   must be considered.'" *Punchbowl*, 52 F.4th at 1100 (quoting *Gordon*, 909 F.3d at

17   269).  The court previously evaluated these factors and found the previous Complaints

18   did not plausibly allege Defendants' Series was "explicitly misleading" under *Rogers*.

19   (Dkt. 57 at 7-12; *see* Dkt. 50 at 13-18.)  As discussed below, the court's conclusion

20   remains unchanged.

21       The court first considers "whether 'the junior user has employed the mark in a

22   different context—[such as] in an entirely different market—than the senior user.'"

23   *Punchbowl*, 52 F.4th at 1100 (alteration in original) (quoting *Gordon*, 909 F.3d at

24   270).  The SAC, like the FAC, alleges contexts in which Plaintiff uses the BMF Mark,

25   namely in connection with his general promotional and business efforts, and primarily

26   in the fitness industry.  However, these alleged uses, when compared to Defendants'

27   Series featuring a dramatized criminal organization, "do not go together like a horse

28   and carriage or, perish the thought, love and marriage." *See E.S.S. Ent.*, 547 F.3d at

1100.  That stated, Plaintiff does allege that he uses the BMF Mark in the title of his YouTube series, "BMF The Series."  But while both Defendants' Series and "BMF The Series" feature criminal enterprises and include the BMF Mark in their respective titles and merchandising, the court finds their underlying subject matters distinguish the parties' respective uses of the BMF Mark.  Specifically, Defendants use "BMF" as an acronym to refer to the subject matter of their Series, an organization referred to as the "Black Mafia Family."  By contrast, the FAC alleges Plaintiff uses "BMF," which stands for "Building Money First," to refer to the brand under which he conducts his business ventures.  There are no plausible allegations supporting a finding that Plaintiff's "BMF: The Series" bears any relation to Defendants' Series beyond their superficial similarities as shows featuring drug empires.  *See Punchbowl*, 52 F.4th at 1101 (rejecting argument that the parties used the mark in the same way "as a brand for online communications services provided to consumers of online services" where "'besides this general similarity, they have nothing in common'") (quoting *E.S.S. Ent.*, 547 F.3d at 1100).  To the limited degree that superficial similarity weighs in favor of finding the SAC plausibly alleges Defendants' use of the BMF mark is explicitly misleading under *Rogers*, if at all, it is defeated by the fact the BMF Mark plays a minor role in the overall scope of Defendants' Series.

The extent of Defendants' use of the BMF Mark in their Series is crucial because the court also "look[s] to 'the extent to which the junior user has added his or her own expressive content to the work beyond the mark itself.'"  *Punchbowl*, 52 F.4th at 1101 (quoting *Gordon*, 909 F.3d at 270).  As the court has found previously, Defendants' use the BMF Mark as a shorthand title for their Series, which encompasses Defendants' own expressive content in the form of Defendants' independent storyline and production.  (*See* Dkt. 50 at 16-18; *see also* Dkt. 57 at 9-11.)  Ultimately, Defendants' use of the BMF Mark in the title of their Series is a minor piece of the Series' "dramatization and recounting of the story of the Black Mafia Family and those involved" and does not bear a meaningful relation to

Plaintiff's alleged uses.  (*See* Dkt. 50 at 17 (alterations adopted).)  Nothing alleged in the SAC alters this conclusion.  As such, this factor, among all the other relevant facts and considerations, militates in favor of finding Defendants' Series does not use the BMF Mark in an explicitly misleading way.  *See Gordon*, 909 F.3d at 270-71 (explaining that the concern that consumers will "be 'misled as to the source of [a] product' is generally allayed when the mark is used as only one component of a junior user's larger expressive creation") (alteration in original) (quoting *Rogers*, 875 F.2d at 998-99) (citation omitted).

In sum, the court finds Defendants' use is not explicitly misleading under *Rogers* as the case is applied in the Ninth Circuit.  *See Dr. Seuss Enters.*, 983 F.3d at 463 (finding use of Seuss' marks was not explicitly misleading despite defendant using "the marks in an illustrated book just as Seuss did" where defendant "added expressive content to the work beyond the mark itself" and defendant's book was "not associated with or endorsed by" Seuss) (cleaned up); *MCA Records*, 296 F.3d 894 at 902 (stating that "if [the use of a mark in a title] were enough to satisfy this prong of the *Rogers* test, it would render *Rogers* a nullity") (emphasis in original); *see also Caiz v. Roberts*, 382 F. Supp. 3d 942, 951 (C.D. Cal. 2019) ("To be 'explicitly misleading,' a defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of the plaintiff's name or other characteristic.") (quoting *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 901 (C.D. Cal. 2013)).

For these reasons, the court concludes *Rogers* precludes the SAC's claims.[2]

---

[2] The parties throughout this litigation have treated Plaintiff's Lanham Act, federal law, and state law claims as a single unit, arguing over whether *Rogers* applies to the operative Complaint generally rather than if *Rogers*' scope is cabined to Lanham Act claims.  The court previously considered whether *Rogers* applied to Plaintiff's state law claims in its order dismissing the initial Complaint and concluded the weight of authority demonstrated the doctrine does.  (Dkt. 50 at 10 n.5.)  Accordingly, in this

1

**B.      Plaintiff's Remaining Arguments**

2

Plaintiff raises several other arguments in response to the Motion.  (*See* Opp. at

3

15-17; 24-25.)  The court addresses each in turn.

4

First, Plaintiff asserts Defendants improperly rely on extrinsic evidence in the

5

Motion.  As Defendants note, (*see* Reply at 6), the court has previously taken judicial

6

notice of materials in connection with their first motion to dismiss, (Dkt. 50 at 6-9).

7

To the extent Defendants' arguments reference or implicate other materials outside the

8

record, the court did not, and need not, consider them to find the *Rogers* test applies.

9

Second, Plaintiff requests the court stay this action pending the Supreme

10

Court's decision in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, No. 22-148.  As a

11

threshold matter, the court need not consider Plaintiff's request for a stay because it is

12

improperly raised in a brief opposing a motion to dismiss.  *See* Fed. R. Civ. P. 7(b);

13

L. R. 7-4.  Regardless, a stay is not warranted.  As Defendants note, (Reply at 9), the

14

questions presented in this appeal address whether the "humorous use" of another's

15

mark receives heightened First Amendment protection under *Rogers*, an issue beyond

16

the scope of the matters presented in this case.  *See generally* Petition for a Writ of

17

Certiorari, *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 2022 WL 3561781 (U.S.

18

Aug. 5, 2022) (No. 22-148).  Because that appeal would not impact the instant

19

litigation, there is no sufficient basis to stay this action pending its disposition.

20

Third, Plaintiff asserts the court should permit this action to proceed to

21

summary judgment.  The court has twice found the operative Complaint's allegations

22

amenable to disposition at the motion to dismiss stage, (*see generally* Dkts. 50, 57),

23

and expressly rejected the argument that summary judgment is necessary to determine

24

the sufficiency of the operative Complaint's allegations, (Dkt. 57 at 15).  The court

25

finds no reason to depart from its past reasoning here.

26

27

28

case, the court finds the SAC's trademark claims under the Lanham Act, state law, and federal common law are all precluded by *Rogers*.

### C.      Leave to Amend

"Although, under Federal Rule of Civil Procedure 15(a)(2), leave to amend should be 'freely' given, that liberality does not apply when amendment would be futile." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016) (citation omitted). "A district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted). The court has twice dismissed Plaintiff's operative Complaint with leave to amend because its allegations did not surmount the *Rogers* test; Plaintiff has not yet alleged facts sufficient to survive the test. In light of Plaintiff's failure to set forth concrete factual allegations that could overcome *Rogers* in the Opposition, (*see* Opp. at 25), the court finds permitting a third amendment would be futile, *see Jackson v. Netflix, Inc.*, 506 F. Supp. 3d 1007, 1016-17 (C.D. Cal. Dec. 9, 2020) (denying leave to amend on the basis of futility where *Rogers* protected defendant's use of plaintiffs' marks and noting the Ninth Circuit has affirmed dismissal with prejudice on *Rogers* grounds where "[t]here is simply no allegation that [defendants] explicitly misled consumers") (alterations in original) (quoting *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 (9th Cir. 2013)). Therefore, the court **DISMISSES WITH PREJUDICE** the SAC.

## IV.     DISPOSITION

For the reasons set forth above, the court **GRANTS** Defendants' Motion and **DISMISSES WITH PREJUDICE** the SAC. The clerk is directed to close the case file.

**IT IS SO ORDERED.**

DATED: March 21, 2023

_____
Honorable Fred W. Slaughter
UNITED STATES DISTRICT JUDGE