1    KILPATRICK TOWNSEND & STOCKTON LLP
     DENNIS L. WILSON (State Bar No. 155407)
2    dwilson@ktslaw.com
     OLIVIA POPPENS (State Bar No. 328359)
3    opoppens@ktslaw.com
     1801 Century Park East, Suite 2300
4    Los Angeles, CA 90067
     Telephone: 310 777 3740
5    Facsimile: 310 380 6097

6    KEVIN M. BELL (*Admitted pro hac vice*)
     kbell@ktslaw.com
7    1400 Wewatta Street, Suite 600
     Denver, CO 80202
8    Telephone: 303 571 4000
     Facsimile: 303 571 4321
9
     Attorneys for Defendants
10

11                  **UNITED STATES DISTRICT COURT**

12            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                         **WESTERN DIVISION**

14

15
     BYRON BELIN,                          Case No. 2:21-cv-9586-FWS
16
                    Plaintiff,             *(Assigned to Hon. Fred W. Slaughter,*
17                                         *Courtroom 10D, 10th Floor)*
             v.
18                                         **DEFENDANTS' NOTICE OF MOTION**
     STARZ ENTERTAINMENT, LLC, a           **AND MEMORANDUM OF POINTS**
19   Colorado limited liability company;   **AND AUTHORITIES FOR**
     LIONS GATE ENTERTAINMENT              **CERTIFICATION OF ORDER FOR**
20   INC., a Delaware corporation; CURTIS  **INTERLOCUTORY APPEAL**
     J. JACKSON III aka 50 CENT, an        **PURSUANT TO 28 U.S.C. § 1292(B) AND**
21   individual-, G-UNIT BRANDS, INC., a   **STAY OF ACTION**
     New York corporation; and G-UNIT
22   FILM & TELEVISION, INC., a New        [Filed Concurrently with Proposed Order]
     York corporation,
23                                         Date: November 7, 2024
                                           Time: 10:00 AM
24                  Defendants.            Location: Courtroom 10D, 10th Floor, 411
                                           West Fourth Street, Santa Ana, CA 92701
25
                                           **Amended Complaint Filed: July 18, 2022**
26                                         **Trial Date: October 21, 2025**

27

28
     DEFENDANTS' MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY
     APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND STAY OF ACTION
     CASE NO. 2:21-CV-9586 FWS

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    　　　PLEASE TAKE NOTICE that on November 7, 2024, or as soon thereafter as

3    the matter may be heard, in the courtroom 10D, 10th Floor of the Honorable Fred W.

4    Slaughter, Judge of the United States District Court for the Central District of

5    California, located at 411 West Fourth Street, Santa Ana, CA 92701. Defendants Starz

6    Entertainment, LLC, Lions Gate Entertainment Inc., Curtis J. Jackson III, G-Unit

7    Brands, Inc. and G-Unit Film and Television, Inc. collectedly hereby do respectfully

8    ask the Court to certify for review under 28 U.S.C. §1292(b) the Court's September

9    24, 2024 Order Denying Defendants' Motion to Dismiss Plaintiff's Second Amended

10   Complaint (Dkt. 95). In addition, Defendants requests that the Court stay proceedings

11   in this action while Defendants' motion for certification pursuant to 28 U.S.C. §

12   1292(b) is resolved.  This Motion is based upon this Notice of Motion and the

13   accompanying memorandum in support filed herewith.

14   　　　This motion is made following discussion with Plaintiff's counsel on October 1,

15   2024, in compliance with L.R. 7-3. Defendants' counsel discussed the bases for the

16   Motion; Plaintiff's counsel indicated Plaintiff would oppose the motion.

17

18   DATED: October 10, 2024        KILPATRICK TOWNSEND & STOCKTON LLP

19

20                                By:   */s/Dennis L. Wilson*

21                                      DENNIS L. WILSON
                                         KEVIN M. BELL

22                                      OLIVIA POPPENS

23                                Attorneys for Defendants

24

25

26

27

28



1

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDINGS ..................................... 3

III.    ARGUMENT ........................................................................ 3

        A.      Legal Standard ......................................................... 4

        B.      The Order Involves a Controlling Question of Law ............................. 5

        C.      There Are Substantial Grounds for Differing Opinion as to the
                Resolution of the Issues Presented ......................................... 6

                1.      The Ninth Circuit's Remand Highlights the Confusion as to
                        Whether Titles of Expressive Works Are Entitled to First
                        Amendment Protection Under Rogers ................................. 6

                2.      Other Courts and Substantial Commentary Highlight the
                        Substantial Basis for Differences in Opinion on this Question .. 8

        D.      Immediate Interlocutory Review Would Materially Advance
                the Ultimate Termination of This Litigation ............................... 10

        E.      In Addition to the Requirements of Section 1292(b), the Public
                Interest in Prompt Resolution of the Rogers Test Militates in
                Favor of Ninth Circuit Review ............................................ 11

        F.      The Court Should Stay This Matter While It Considers
                Interlocutory Appeal ..................................................... 12

IV.     CONCLUSION ..................................................................... 18



# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Asis Internet Servs. v. Active Response Grp.*,
  2008 WL 4279695 (N.D. Cal. Sept. 16, 2008) ............................................ 12, 16

*Byron Belin v. Starz Entertainment, LLC*,
  No. 23-55372 ............................................................................................ 10

*Casas v. Victoria's Secret Stores, LLC*,
  2015 WL 13446989 (C.D. Cal. Apr. 9, 2015) ............................................. 12, 13

*In re Cement Antitrust Litig.*
  (MDL No. 296), 673 F.2d 1020 (9th Cir. 1982). ........................................... 1, 5

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) ............................................................................ 12

*Contra Costa Cty. v. Barbara C.*,
  Case Nos. 14-CV-268 *et seq*, 2014 WL 2768691 (N.D. Cal. June 11,
  2014) ................................................................................................................ 14

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) (citing 3 Federal Procedure, Lawyers
  Edition § 3:212 (2010). .................................................................................. 5, 7

*Davis v. Amazon.com, Inc.*,
  No. 2:21-CV-02090-JVS-JDEX, 2023 WL 8113299 (C.D. Cal. Nov.
  2, 2023) .......................................................................................................... 11, 17

*Down to Earth Organics, LLC v. Efron*,
  No. 22-CV-06218 (NSR), 2024 WL 1376532 (S.D.N.Y. Mar. 31,
  2024) .......................................................................................................... 4, 8, 9

*Filtrol Corp. v. Kelleher*,
  467 F.2d 242 (9th Cir. 1972) ............................................................................ 12

*Finder v. Leprino Foods Co.*,
  No. 1:13-CV-2059, 2017 WL 1355104 (E.D. Cal. Jan. 20, 2017) ................... 16



*Fishman v. Subway Franchisee Advert. Fund Tr., Ltd.*,
    2020 WL 1676390 (C.D. Cal. Apr. 6, 2020)..................................................11

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    No. CV-13-5693, 2014 WL 12614472 (C.D. Cal. Nov. 20, 2014)........14, 16, 17

*Genentech, Inc. v. Novo Nordisk A/S*,
    907 F.Supp. 97 (S.D.N.Y.1995) ...........................................................................5

*HomeVestors of America, Inc. v. Warner Bros Discovery, Inc.*,
    No. 22-1583-RGA, 2023 WL 6880341 (D.Del. Oct. 18, 2023) ...............4, 9, 10

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
    No. CV 17-1694 PSG (SSX), 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019)..........................................................................................................15

*U.S. ex rel. Integra Med Analytics LLC v. Providence Health and Serv's*,
    No. 17-CV-1694, 2019 WL 3282619 (C.D. Cal. July 16, 2019) .....................14

*J. Doe 1 v. GITHUB, Inc.*,
    No. 22-CV-6823, 2024 WL 4336532 (N.D. Cal. Sept. 27, 2024) ...................17

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
    599 U.S. 140 (2023) ..............................................................................*passim*

*Jaco v. WinCo Holdings, Inc.*,
    No. 18-CV-00301-DAD-EPG, 2019 WL 2615739 (E.D. Cal. June 26, 2019)..........................................................................................................16

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ...............................................................................12

*Krangel v. Crown*,
    791 F. Supp. 1436 (S.D. Cal. 1992) ..................................................................12

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012).........................................................................14

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) (*per curiam*).......................................................13

*Mar Vista Ent., LLC v. THQ Nordic AB*,
    No. 2:23-CV-6924, 2024 WL 3468933 (C.D. Cal. July 8, 2024)...........9, 11, 17



*Mattel, Inc. v. MCA Records, Inc.,*
    296 F.3d 894 (9th Cir. 2002) ........................................................................ 2, 7

*McGillvary v. Netflix, Inc.,*
    No. 2:23-CV-01195-JLS-SK, 2024 WL 3588043 (C.D. Cal. July 30,
    2024) ........................................................................................................ 11, 17

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.,*
    708 F.2d 1458 (9th Cir .1983) ......................................................................... 13

*Nken v. Holder,*
    556 U.S. 418 (2009) ................................................................................... 13, 17

*Punchbowl, Inc. v. AJ Press, Inc.,*
    90 F.4th 1022 (9th Cir. 2024) ............................................................................ 7

*Reese v. BP Exploration (Alaska) Inc.,*
    643 F.3d 681 (9th Cir. 2011) .......................................................................... 5, 6

*Ritz Camera & Image, LLC v. Sandisk Corp.,*
    No. 5:10–cv–02787–JF/HRL, 2011 WL 3957257 (N.D. Cal. Sept. 7,
    2011) ................................................................................................................ 16

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1989) .................................................................... *passim*

*Rollins v. Dignity Health,*
    No. 13-CV-1450, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ............... 16, 17

*Silbersher v. Allergan Inc.,*
    No. 18-CV-3018, 2021 WL 292244 (N.D. Cal. Jan. 28, 2021) ........................ 16

*Sokaogon Gaming Enter. v. Tushie–Montgomery Assoc.,*
    86 F.3d 656 (7th Cir.1996) ................................................................................ 5

*Steering Committee v. United States,*
    6 F.3d 572 (9th Cir. 1993) .............................................................................. 1, 5

*Twentieth Century Fox Television v. Empire Dist., Inc.,*
    875 F.3d 1192 (9th Cir. 2017) ......................................................................... 7, 8

*U.S. v. Real Prop. & Improvements Located at 2366 San Pablo Ave.,*
    *Berkeley, Cal.,*
    No. 13-CV-2027, 2015 WL 525711 (N.D. Cal. Feb. 6, 2015) ......................... 14



*U.S. v. Real Prop. and Improvements Located at 2441 Mission Street, San Francisco, Cal.*, No. C-13-2062, 2014 WL 1350914 (N.D. Cal. Apr. 4, 2014) ........................... 17

*United States v. Woodbury*, 263 F.2d 784 (9th Cir. 1959) ...................................................... 15

**Statutes**

28 U.S.C. § 1292(b) .......................................................................*passim*

**Other Authorities**

Kevin Flynn, *The Past, Present, and Future of the Rogers Test: Would Jack Daniel's Have Impacted Viacom?*, 26 Tul. J. Tech. & Intell. Prop. 233, 241 (2024) ........................................................ 10

Mark A. Lemley, Rebecca Tushnet, *First Amendment Neglect in Supreme Court Intellectual Property Cases*, 2023 Sup. Ct. Rev. 85, 109 (2023) ................................................................................ 10

Oral Argument at 9:14 to 9:30, March 28, 2024 (available at https://www.ca9.uscourts.gov/media/video/?20240328/23-55372/) ................ 10

Todd Spangler, *Off-Peak TV: Number of U.S. Scripted Shows Fell 24% In 2023, Study Finds* (Jan. 19, 2024, 5:49 AM), https://variety.com/2024/tv/news/us-scripted-tv-shows-2023-peak-tv-study-1235877669/ ............................................................. 11

DEFENDANTS' MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND STAY OF ACTION
CASE NO. 2:21-CV-9586 FWS

vi



<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

In its September 20, 2024 Order ("the Order") (Dkt. 95), this Court denied Defendants' Motion to Dismiss the Second Amended Complaint, a motion that was remanded to this Court by the Ninth Circuit to answer the following legal question: "[W]hether the defendants use the BMF mark as a trademark." Dkt. 83 at 2 (May 8, 2024 Memorandum). Defendants respectfully move for certification for interlocutory review under 28 U.S.C. § 1292(b) of the Order, in which the Court addressed this case-dispositive legal issue and ruled that Plaintiff has alleged that Defendants are using BMF "as a trademark." Such a legal holding, in addition to dictating the future of the legal proceedings in this case, impacts the marketing and promotion of myriad creative works, raising immediate questions as to whether titles of expressive works—or, as here, a shortened title—retain the First Amendment protection afforded by the longstanding *Rogers* doctrine.

Section 1292(b) permits certification of interlocutory orders for immediate appellate review where, as here, a district court's ruling involves a controlling question of law as to which there are substantial grounds for difference of opinion and resolution of which would materially advance termination of the litigation. *See In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1026 (9th Cir. 1982). One purpose of the interlocutory appeals statute is to avoid the expense and delay of litigating remedy and damages issues when doing so would be unnecessary if the liability issue should be reversed. *See Steering Committee v. United States*, 6 F.3d 572, 575 n. 1 (9th Cir. 1993).

This is precisely the situation here: An immediate appeal to address whether *Rogers* applies—*i.e.*, whether Defendants are using the shortened title BMF "as a trademark"—would avoid unnecessary litigation should the Ninth Circuit reverse the Order. As explained in the recent supplemental briefing, if Defendants are not

using BMF as a source identifier, then the *Rogers* test would apply and the First Amendment protections afforded would result in the dismissal of all claims. Dkt. 91, 94. By certifying for interlocutory appeal the primary question at issue—whether the Defendants use the BMF name as a trademark—this Court will allow the Ninth Circuit the opportunity to review the Order and efficiently adjudicate that issue.

Moreover, the Order raises important public-policy issues that militate in favor of an efficient interlocutory review. *Rogers* has governed the promotion of creative titles for decades; creators, producers, publishers, distributors, and broadcasters of all types have relied on the clarity of the *Rogers* test and its application by appellate courts, particularly when the use in question—the title of an expressive work—directly invokes the protected use in *Rogers. See, e.g., Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989) (applying First Amendment protections to the film "Fred and Ginger," and noting that an "overextension" of Lanham Act restrictions "might intrude on First Amendment values," and concluded that expressive works required "more protection than the labeling of ordinary commercial products."). In contrast, the marks in *Jack Daniel's* were used by the defendants on a consumer product—a dog squeak toy—rather than a conventional creative work. The Court in *Jack Daniel's* even noted that the use of "Barbie" in a song, titled "Barbie Girl," is precisely a type of use that remains protected under *Rogers. See Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023). By finding that Plaintiff's allegations sufficiently allege "use as a trademark"—differentiating Defendants' use from the protected use in *Mattel*—the Order highlights the substantial uncertainty as to the application of *Jack Daniels* to situations that conventionally would fall under *Rogers*.

Given the novelty of the question of the application of the *Rogers* test in the post-*Jack Daniel's* world, Defendants respectfully request that the Court certify the Order for interlocutory review, in particular the question of whether Defendants use



BMF "as a trademark." Defendants further request that, if the Court certifies the Order for interlocutory appeal, the Court also stay proceedings in this action pending the Ninth Circuit's review. The Order addresses a case-dispositive issue of first impression for the Ninth Circuit that will profoundly impact the use and promotion of not only the "BMF" title but also the myriad creative titles promoted every day throughout the entertainment and media industries. Accordingly, this case militates in favor of a stay pending interlocutory review.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This Court thrice dismissed Plaintiff's complaint as being barred under the *Rogers* test. Dkt. 50 (the "Order") at 12; Dkt. 57 (the "2nd Order") at 11 (same); Dkt. 68 (the "3rd Order") at 11 (same). Following appeal of the 3rd Order, this Court was charged by the Ninth Circuit Court of Appeals to address the dispositive legal question in the first instance: "[W]hether the defendants use the BMF mark as a trademark." Dkt. 83 at 2.

After receiving supplemental briefing on the question on remand (Dkts. 91, 92, 94), the Court issued the Order, finding "Defendants do use the BMF Mark as a trademark." Dkt. 95 at 6. The Court then ordered that Defendants file their answer by October 11, 2024. *Id.* at 12. The Court previously entered a scheduling order for this matter. Dkt. 90.

## III.    ARGUMENT

Defendants request that the Court grant this motion for certification on this significant legal issue because the elements of 28 U.S.C. § 1292(b) are squarely met. Here, the *first* and *third* elements for certification—a controlling issue of law that may materially advance the ultimate termination of the litigation—are not in dispute.  The statutory requirements thus are met if the *second* element exists—a substantial ground for difference of opinion on the question presented.

As to the <u>*first*</u> element, there is no dispute that the Order does rule on a



controlling issue of law—namely, whether the *Rogers* test applies as to Defendants' alleged use of "BMF." The *second* element is equally met. Post-*Jack Daniel's*, courts have struggled with determining whether the titles of television shows retain First Amendment protection under *Rogers*. *See Down to Earth Organics, LLC v. Efron*, No. 22-CV-06218 (NSR), 2024 WL 1376532, at *4 (S.D.N.Y. Mar. 31, 2024) (applying *Rogers* to the title of a television series "Down To Earth," as "Defendants are undoubtedly using 'Down to Earth' simply to identify the subject matter and tone of the Series," as opposed to using the title as a trademark) *cf. HomeVestors of America, Inc. v. Warner Bros Discovery, Inc.*, No. 22-1583-RGA, 2023 WL 6880341, at *4 (D.Del. Oct. 18, 2023) (noting that "neither party could articulate a test or method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way.").

The *third* element, as with the first, is undisputed. Should the Ninth Circuit reverse the Order and find that Defendants do not use BMF "as a trademark," then the First Amendment protections outlined in *Rogers* applies and all claims should be dismissed. Therefore, this is an especially stark case where immediate Ninth Circuit review of the Order would materially advance the termination of this litigation and avoid unnecessary litigation.

## A.    Legal Standard

Title 28 U.S.C. § 1292(b), in relevant part, states:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order…

Thus, an interlocutory appeal is permitted when: (1) the order involves a



controlling question of law; (2) there is a substantial ground for difference of opinion regarding its correctness; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *See In re Cement Antitrust Litig.*, 673 F.2d at 1026. The exercise of discretion to allow appeal of interlocutory orders should be informed by the practical application of the policies informing interlocutory appeals, including the avoidance of the expense and delay of litigating the damages issue when doing so would be unnecessary if the liability issue should be reversed. *See Steering Committee*, 6 F.3d at 575 n. 1 (1993).

"A question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. v. Tushie–Montgomery Assoc.*, 86 F.3d 656, 659 (7th Cir.1996) (citations omitted); *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). An issue of law may also be considered "controlling" if reversal of an order would terminate the action. *Genentech, Inc. v. Novo Nordisk A/S*, 907 F.Supp. 97, 99 (S.D.N.Y.1995).

Courts traditionally will find that a substantial ground for difference of opinion exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch v. Telescope Inc.,* 611 F.3d 629, 633 (9th Cir. 2010) (citing 3 Federal Procedure, Lawyers Edition § 3:212 (2010)).

**B.    The Order Involves a Controlling Question of Law**

A controlling question of law certainly exists in this matter. This Court has thrice dismissed all claims raised by Plaintiff under the *Rogers* test; following appeal and the intervening decision in *Jack Daniel's*, the Ninth Circuit requested that the Court consider a single question of law in the first instance: "[W]hether the defendants use the BMF mark as a trademark." Dkt. 83 at 2. Resolution of that



question in Defendants' favor would have resulted in the *Rogers* test applying again, with all claims dismissed. Finding, as the Court did, in Plaintiff's favor, means that this case may proceed to a question on "likelihood of confusion."

As this Court has previously held, the *Rogers* test represents a threshold question as to whether the First Amendment bars a claim for relief, and resolution of that question is appropriate at the motion to dismiss stage. Dkt. 50 at 9-10. As the Supreme Court explained in *Jack Daniel's*, if a given term ("BMF" in this case) is not being used by Defendants to "***designate the source of its own goods***," then the *Rogers* test should be applied. *Jack Daniel's*, 599 U.S. at 145 (emphasis added). Therefore, reversal of the Order on immediate appeal to the Ninth Circuit again would bar Plaintiff's claims against Defendants. This makes the question presented a controlling question of law. *See Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding resolution of a claim against one more defendants is "sufficient to advance materially the litigation, and therefore certification of the interlocutory appeal was permissible.").

### C.    There Are Substantial Grounds for Differing Opinion as to the Resolution of the Issues Presented

#### 1.    The Ninth Circuit's Remand Highlights the Confusion as to Whether Titles of Expressive Works Are Entitled to First Amendment Protection Under *Rogers*.

Substantial grounds for differing opinions exist as to the question of law. As the Ninth Circuit's remand demonstrated, whether the use of the title of an expressive work in advertising that expressive work is a *trademark use* under *Jack Daniel's* or whether that use remains protected by the *Rogers* defense is a novel question of law. Dkt. 83 at 2-3 ("The district court did not determine whether the defendants use the BMF mark as a trademark. . . . [a]nd the briefing before us on that question is limited. . . . '[a]s a federal court of appeals, we must always be mindful that we are a court of review, not first view.' . . . [w]e thus remand for the district court to consider in the first instance whether the defendants use the BMF



1  mark as a trademark.") (quoting *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th

2  Cir. 2023)). This application of *Jack Daniel's* also reflects a difficult question,

3  requiring the Court to distinguish between protected uses (such as those reflected in

4  *Mattel*) and unprotected uses (such as those in *Punchbowl*) without the benefit of

5  specific guidance from the Ninth Circuit. *Compare Mattel, Inc. v. MCA Records,*

6  *Inc.,* 296 F.3d 894 (9th Cir. 2002) (applying *Rogers* favorably to the title of a song)

7  *with Punchbowl, Inc. v. AJ Press, Inc.,* 90 F.4th 1022, 1024 (9th Cir. 2024) (finding

8  that the name of a news website is use "as a trademark," and not protected under

9  *Rogers*). In answering this question in the Order, the Court had to distinguish

10 Defendants' use—as a "shortened title," "shortened name," or initialism of the

11 series "Black Mafia Family," (Dkt. 95 at 10)—from uses that the Court

12 acknowledged would be entitled to *Rogers* protection. Specifically, the Court

13 distinguished the protected use of "Barbie Girl" as the title of a song, written and

14 performed by the band Aqua, from Defendants' use of BMF as a title of its Series,

15 produced and aired by Defendants. Dkt. 95 at 9-11 (discussing "Barbie Girl" in

16 relation to Defendants' use); *see also Mattel,* 296 F.3d at 901 (9th Cir. 2002).

17 Whether there is a distinguishable difference between a protected use in the title of a

18 song and a shortened title of series represents a novel and difficult question of first

19 impression. *See Couch,* 611 F.3d at 633.

20      Moreover, the Ninth Circuit in *Punchbowl* explicitly left intact and binding all

21 prior cases that properly applied *Rogers*, explaining: "[B]ecause the Supreme

22 Court's decision in *Jack Daniel's* was confined to a 'narrow' point of law,

23 that *Rogers* does not apply when a mark is used as a mark, preexisting Ninth Circuit

24 precedent adopting and applying *Rogers* otherwise remains intact and binding on

25 three-judge panels." *Punchbowl,* 90 F.4th at 1031. In so doing, the Ninth Circuit left

26 intact and binding prior decisions where a television show—and its promotion and

27 marketing—are deemed protected under the First Amendment. *See, e.g., Twentieth*

28



DEFENDANTS' MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY
APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND STAY OF ACTION
CASE NO. 2:21-CV-9586 FWS                                                    7

1   *Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192, 1196-97 (9th Cir.

2   2017) (extending the *Rogers* to promotional efforts for the expressive work for

3   Fox's television show "Empire," "including those that generate revenue . . . ").

4           In *Twentieth Century Fox*, the Ninth Circuit stated that "the *Empire* television

5   show was clearly an expressive work," and held that promotional activities under

6   the "*Empire* brand"—such as "appearances by cast members in other media, radio

7   play, online advertising, live events, and the sale or licensing of consumer goods"—

8   were also protected by *Rogers* under "only a minor logical extension of the

9   reasoning of *Rogers*," namely that the show may be "advertised and marketed by

10  name . . ."  875 F.3d at 1196-97. This Court did not address *Twentieth Century Fox*

11  in its Order. As *Twentieth Century Fox* is still "intact and binding" post-*Punchbowl*,

12  substantial grounds for a difference of opinion exists as to whether Defendants' use

13  of BMF as the shortened title of a television series is protected by *Rogers*

14  (protection that would also extend, as a matter of law, as to all ancillary uses for

15  promotion and marketing).

16           **2.       Other Courts and Substantial Commentary Highlight the Substantial Basis for Differences in Opinion on this Question.**

17           At least one other district court—in the Southern District of New York—

18  recently (but post-*Jack Daniel's*) held that a title of a television series still qualified

19  for First Amendment protection under *Rogers*. In *Down to Earth Organics*, the title

20  of defendants' television show, "Down to Earth," was identical in appearance to the

21  asserted mark, DOWN TO EARTH; nevertheless, the district court found

22  defendants "are undoubtedly using 'Down to Earth' simply to identify the subject

23  matter and tone of the [s]eries." 2024 WL 1376532, at *4 (citing *JTH Tax LLC v.*

24  *AMC Networks Inc*., No. 22 CIV. 6526 (PGG), 2023 WL 6215299, at *7 (S.D.N.Y.

25  Sept. 25, 2023) (finding to the extent that defendants used plaintiff's "Liberty Tax"

26  trademark in its television show "Better Call Saul," it was only in the furtherance of

27  the show's plot and not to identify the source of the show). In so doing, the court

28



"afforded" the defendants "the heightened First Amendment scrutiny of the *Rogers* balancing test." *Id.* at *5. Such a finding underscores the need for the Ninth Circuit to provide guidance on this question.

Relatedly, in *HomeVestors of America*, the district court specifically noted that no party could "articulate a test or method for determining, at the motion to dismiss stage or otherwise, whether an allegedly infringing mark is being used in a source-identifying way." 2023 WL 6880341, at *4. As noted in Defendants' recent brief, while that court ultimately did not apply *Rogers*, the court only came to that conclusion after accepting as plausible allegations that the two parties were active competitors for houses and homeowners for their respective "ugliest house" competitions, which used nearly identical marks—THE UGLIEST HOUSE OF THE YEAR vs. "Ugliest House in America"—and that the defendant sought to partner with the mark holder "for purposes of capitalizing on" the mark holder's existing brand. *Id.* Substantial plausible allegations of that sort simply are not present here.

And most recently, the post-*Jack Daniel's* decision in *Mar Vista Entertainment* noted substantial disagreement in the case law regarding whether the title of a creative work ever could qualify as a source-identifier and thus fall under the *Jack Daniel's* decision. *See Mar Vista Ent., LLC v. THQ Nordic AB*, No. 2:23-CV-6924, 2024 WL 3468933, at *3 (C.D. Cal. July 8, 2024) ("The cases cited by Mar Vista on this point do indeed hold that the title of a single creative work cannot serve as a source identifier.") Under existing rulings of the Trademark Trial and Appeal Board, "[t]he title of a single creative work is not considered a trademark" and "is, of necessity, descriptive of the work and does not function as a trademark." *Id.* (internal quotation marks omitted). This preexisting principle, not addressed by *Jack Daniel's* or the facts presented in that case, will need to be addressed by the Ninth Circuit.



Likewise, following *Jack Daniel's*, commentators have weighed in on the thorny question of whether titles of undoubtedly expressive works—here, Defendants' Series—should retain protection under *Rogers*: "Titles deserve the same degree of First Amendment protection as the other parts of an artistic work because they convey an idea or express a particular subject matter." Kevin Flynn, *The Past, Present, and Future of the Rogers Test: Would Jack Daniel's Have Impacted Viacom?,* 26 Tul. J. Tech. & Intell. Prop. 233, 241 (2024). Leading commentators on intellectual property issues, Professors Mark Lemley and Rebecca Tushnet, specifically noted that if courts continue to find that the titles of television shows are not entitled to protection under *Rogers*, the natural outcome is that "the *Rogers* test wouldn't have been applicable to *Rogers* itself, since that case, like *HomeVestors*, involved the title of an expressive work." Mark A. Lemley, Rebecca Tushnet, *First Amendment Neglect in Supreme Court Intellectual Property Cases*, 2023 Sup. Ct. Rev. 85, 109 (2023). It is critical that the Court allow an opportunity for the Ninth Circuit to weigh in and provide clear guidance as to whether the First Amendment protection afforded by *Rogers* applies to titles of television programs and their associated marketing and promotion.

Granting certification would allow the Ninth Circuit to address this novel and difficult question of law, on which there is substantial grounds for differing opinion.

### D.    Immediate Interlocutory Review Would Materially Advance the Ultimate Termination of This Litigation

Should the Ninth Circuit reverse the Order and find that Plaintiff fails to plausibly plead that Defendants use BMF "as a trademark," the subsequent application of the *Rogers* test to these facts would result in dismissal of all claims. As noted in Defendants' prior briefing (Dkt. 94 at 3), during oral argument before the Ninth Circuit, Plaintiff's counsel conceded that should the *Rogers* test apply, then Plaintiff loses. *Byron Belin v. Starz Entertainment, LLC*, No. 23-55372, Oral Argument at 9:14 to 9:30, March 28, 2024 (available at



https://www.ca9.uscourts.gov/media/video/?20240328/23-55372/). Accordingly, a finding on appeal that Defendants' use is still protected by the First Amendment under *Rogers* undoubtedly would materially advance the ultimate termination of this litigation.

**E.    In Addition to the Requirements of Section 1292(b), the Public Interest in Prompt Resolution of the *Rogers* Test Militates in Favor of Ninth Circuit Review**

While not a statutory requirement, interlocutory appeal is favored where appellate review would clarify the issue for not only the instant case, but other cases as well. *See Fishman v. Subway Franchisee Advert. Fund Tr., Ltd*., 2020 WL 1676390, at *3 (C.D. Cal. Apr. 6, 2020) ("[A]n interlocutory appeal may be appropriate where resolution of the issue would advance the litigation not only in the current case, but also in other pending cases."). Clarifying the impact of *Jack Daniel's* on the *Rogers* test would have implications across the entertainment, media, and publishing industries. Even if one only examines the impact on the scripted television industry, there are well over 400 new scripted television series broadcast or streamed in the United States each year, each of which could be affected by the fate of the *Rogers* test post-*Jack Daniel's*. Todd Spangler, *Off-Peak TV: Number of U.S. Scripted Shows Fell 24% In 2023, Study Finds*, (Jan. 19, 2024, 5:49 AM), https://variety.com/2024/tv/news/us-scripted-tv-shows-2023-peak-tv-study-1235877669/.

Indeed, the Ninth Circuit's guidance on the question of whether a use is "as a trademark" would be helpful not only to this case, but also to cases across the Circuit, including pending cases that will be determined largely by the Ninth Circuit's ruling. *See generally Davis v. Amazon.com, Inc.,* No. 2:21-CV-02090-JVS-JDEX, 2023 WL 8113299 (C.D. Cal. Nov. 2, 2023) (addressing *Rogers* in the context of the title of a movie); *Mar Vista Ent.*, 2024 WL 3468933 (same); *McGillvary v. Netflix, Inc.*, No. 2:23-CV-01195-JLS-SK, 2024 WL 3588043, at *13



(C.D. Cal. July 30, 2024) (addressing *Rogers* in the context of the title of a documentary). As has long been recognized in this Circuit, an interlocutory appeal is particularly justified where it "may also materially advance the conclusion of other cases involving th[e] same legal issue presented." *Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992). *See also, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("the impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court.").

As in those cases, a reversal by the Ninth Circuit would not only avoid unnecessary future litigation in this case but also would streamline and potentially resolve the other pending actions affected by the issue presented. The conservation of party and judicial resources warrants interlocutory appeal.

## F.    The Court Should Stay This Matter While It Considers Interlocutory Appeal

While the Court considers this Motion, Defendants request that the Court stay discovery and related matters. This Court has broad, inherent discretion to grant such a stay, especially in the context of interlocutory appellate review under Section 1292(b). "A district court has authority to stay proceedings pending a § 1292(b) appeal both under § 1292(b) itself and under the court's inherent authority to manage its docket." *Casas v. Victoria's Secret Stores, LLC*, 2015 WL 13446989, at *5 (C.D. Cal. Apr. 9, 2015). Courts routinely stay further legal proceedings pending a party's interlocutory appeal for the purpose of promoting "economy of time and effort for [themselves], for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *accord Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972).

"When considering a stay pending appeal pursuant to § 1292(b), the Court has broad discretion to decide whether a stay is appropriate to 'promote economy of time and effort for itself, for counsel, and for litigants.'" *Asis Internet Servs. v. Active Response Grp.*, 2008 WL 4279695, at *3–4 (N.D. Cal. Sept. 16, 2008)



1  (quoting *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972)); *accord*

2  *Casas*, 2015 WL 13446989, at *5; *see also Mediterranean Enterprises, Inc. v.*

3  *Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir .1983) ("[A] trial court may, with

4  propriety, find it is efficient for its own docket and the fairest course for the parties

5  to enter a stay of an action before it, pending resolution of independent proceedings

6  which bear upon the case.") (quoting *Leyva v. Cert. Grocers of Cal., Ltd.*, 593 F.2d

7  857, 863–64 (9th Cir. 1979)).

8       In addressing a request for a stay, courts are guided by the factors articulated

9  in *Nken v. Holder*, 556 U.S. 418 (2009), which are: "(1) whether the stay applicant

10 has made a strong showing that he is likely to succeed on the merits; (2) whether the

11 applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

12 will substantially injure the other parties interested in the proceeding; and (4) where

13 the public interest lies." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011)

14 (*per curiam*) (quoting *Holder*, 556 U.S. at 434).

15      Here, absent a stay, the parties will need to engage in substantial,

16 unrecoverable, and wasteful discovery and motion practice on matters that could be

17 mooted by the appeal, if granted. There is no countervailing harm to Belin (as there

18 is no pending motion for immediate injunctive relief), and staying the proceedings

19 would further conserve judicial resources and promote the most efficient resolution

20 of this case. Accordingly, Defendants respectfully requests a stay while the Court

21 considers the Motion (and, if granted, while the Ninth Circuit reviews Defendants'

22 subsequent 1292(b) petition). All four factors favor Defendants.

23      ***First***, as discussed in detail above, Defendants have made a strong showing

24 that they will succeed on the merits of the Motion and the subsequent petition to the

25 Ninth Circuit. Notably, for this factor to favor a stay, Defendants "need *not*

26 demonstrate that it is more likely than not that that they will win on the merits."

27 *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (emphasis in original).

28



1  Rather, this factor reflects the principle that, "in order to justify a stay, a petition

2  must show, at a minimum, that [it] has a substantial case for relief on the merits," *id.*

3  at 968, which has variously been established where "the appeal presents a serious

4  question of law". *U.S. ex rel. Integra Med Analytics LLC v. Providence Health and*

5  *Serv's*, No. 17-CV-1694, 2019 WL 3282619, at *7 (C.D. Cal. July 16, 2019). *See*

6  *also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV-13-5693, 2014 WL

7  12614472, at *4-5 (C.D. Cal. Nov. 20, 2014) ("'the minimum quantum of likely

8  success necessary to justify a stay' is a 'reasonable probability' of success, 'a

9  substantial case on the merits,' or that 'serious questions are raised.'") (quoting

10  *Leiva-Perez*, 640 F.3d at 967-68); *accord Lair v. Bullock*, 697 F.3d 1200, 1204 (9th

11  Cir. 2012) ("substantial case for relief on the merits" exists where an appeal raises

12  "serious legal questions" with at least a "fair prospect" of the appellant's success)

13  (internal quotation marks omitted).

14    This standard is met. This factor is satisfied where, as here, "[t]he case is one

15  of first impression given that the Ninth Circuit has never squarely" resolved the

16  issue presented—*i.e.*, whether the *Rogers* test continues to protect the promotion of

17  creative titles following *Jack Daniel's*. *Integra Med Analytics LLC*, 2019 WL

18  3282619, at *7. *See also U.S. v. Real Prop. & Improvements Located at 2366 San*

19  *Pablo Ave., Berkeley, Cal.*, No. 13-CV-2027, 2015 WL 525711, at *2 (N.D. Cal.

20  Feb. 6, 2015) (first factor of the stay analysis is met where the question presented

21  addresses a "legal question of first impression"); *Contra Costa Cty. v. Barbara C.*,

22  Case Nos. 14-CV-268 *et seq*, 2014 WL 2768691, at *203 (N.D. Cal. June 11, 2014)

23  (same, where question presented concerned "an unsettled are of law"). Given the

24  unresolved nature of the question presented, although the Court ruled in Plaintiff's

25  favor via the Order, substantial commentary from the Ninth Circuit and other

26  authorities raises at least the "fair prospect" or "substantial case" that the Ninth

27  Circuit, when it rules on the issue, may sufficiently preserve the *Rogers* defense to

28



warrant reversal of the Order. *See authorities cited*, Part III.C.1-2 *supra*.

**Second**, a stay would avoid hardship to the parties and the Court. As to Defendants specifically, the litigation of this action directly impacts how and to what extent Defendants may promote the Series by using the shortened title "BMF" in any advertising or marketing. Any legal proceedings, including summary judgment, pretrial motions, and trial on the merits, that may prejudice Defendants' ability to use the "BMF" title to the fullest extent legally permitted should be avoided if certification to the Ninth Circuit is granted.

In addition, both Defendants and Plaintiff face the prospect of expensive and wasteful proceedings and discovery that would be abrogated should the Ninth Circuit find that Defendants use is **not** "as a trademark." This case remains in its earliest stages, and a prompt resolution of this important question will unquestionably save the parties' and the Court's time and resources. While a scheduling order has issued, no party has served discovery and a battle over alleged "likelihood of confusion" remains ahead. Moreover, the Plaintiff's mark is currently facing cancellation proceedings at the trademark office by a third party. Should the case proceed, Defendants themselves anticipate filing multiple counterclaims directed to whether Plaintiff even has enforceable trademark rights, which entails discovery separate and apart from any "likelihood of confusion" analysis. The potential savings in time, judicial economy, costs, and resources are optimized when interlocutory review of controlling legal questions is permitted during these early stages. Indeed, as the Ninth Circuit has noted, Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of controlling legal questions such as those concerning statute of limitations. *See United States v. Woodbury*, 263 F.2d 784, 787 (9th Cir. 1959); *see also United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 6973547, at *5



(C.D. Cal. Oct. 8, 2019) (granting certification because, in part, discovery had not started); *Jaco v. WinCo Holdings, Inc.*, No. 18-CV-00301-DAD-EPG, 2019 WL 2615739, at *5 (E.D. Cal. June 26, 2019) (same).

The above proceedings and significant expenses would be avoided entirely if the Ninth Circuit reverses the Order. In such a situation where, upon reversal, "litigation in this case will end," this factor strongly favors granting a stay. *Asis Internet*, 2008 WL 4279695 at *4. *See also Ritz Camera & Image, LLC v. Sandisk Corp.*, No. 5:10–cv–02787–JF/HRL, 2011 WL 3957257, at *3 (N.D. Cal. Sept. 7, 2011) ("In light of the well-documented cost of discovery in cases arising from or related to intellectual property disputes, the Court finds that a stay is warranted here"); *Finder v. Leprino Foods Co.*, No. 1:13-CV-2059, 2017 WL 1355104, at *4 (E.D. Cal. Jan. 20, 2017) ("forcing a party to conduct substantial, unrecoverable, and wasteful discovery and pretrial motions practice on matters that could be mooted by a pending appeal may amount to a hardship or inequity sufficient to justify a stay.") (citations and internal quotation marks omitted). In short, "[i]mposing a stay promotes orderly litigation by preventing the parties from arguing and the Court from deciding issues that may be rendered moot by the Ninth Circuit's decision." *Rollins v. Dignity Health*, No. 13-CV-1450, 2014 WL 6693891, at *5 (N.D. Cal. Nov. 26, 2014).

***Third***, Belin makes no claim for immediate injunctive relief and thus faces no likelihood of substantial injury during such a short stay. "[P]laintiffs seeking damages awards are not substantially injured by some delay" pending interlocutory appeal. *Flo & Eddie, Inc.*, 2015 WL 4397175 at *4. Moreover, where a reversal on appeal may dispose of a case, then the avoidance of "burdensome and expensive discovery" and trial costs "***outweighs***" any alleged "countervailing burden on [Plaintiff] caused by the delay associated with an immediate appeal." *Silbersher v. Allergan Inc.*, No. 18-CV-3018, 2021 WL 292244, at *3 (N.D. Cal. Jan. 28, 2021)



(emphasis added). A Plaintiff in this situation "will not be injured by freezing discovery" and related proceedings "now; [he] will merely have to wait until a later date, when it is clearer that such discovery is needed." *Rollins*, 2014 WL 6693891, at *5.

**Fourth**, Defendants have established above a substantial public interest in the question of whether *Rogers* applies to titles of expressive works. The post-*Jack Daniel's* reach of the *Rogers* defense will not only significantly impact how all entertainment, media, and publishing companies promote the titles of their works; it also will directly affect the outcomes of cases currently pending in this Circuit. *See, e.g.*, *Davis v. Amazon.com, Inc.*, 2023 WL 8113299; *Mar Vista Ent., LLC v. THQ Nordic AB*, 2024 WL 3468933; *McGillvary v. Netflix, Inc.*, 2024 WL 3588043, at *13. A stay is warranted where the interlocutory appeal "would not only materially advance the termination of this litigation, but other actions in this district," including "at least three other *pending* [] cases in this district involving" the same issue. *U.S. v. Real Prop. and Improvements Located at 2441 Mission Street, San Francisco, Cal.*, No. C-13-2062, 2014 WL 1350914, at *4 (N.D. Cal. Apr. 4, 2014) (emphasis added); *accord J. Doe 1 v. GITHUB, Inc.*, No. 22-CV-6823, 2024 WL 4336532, at *2 (N.D. Cal. Sept. 27, 2024) (stay granted where Ninth Circuit ruling in interlocutory appeal would advance resolution of "other[] cases in the Circuit raising the same issue.").

Moreover, separate and apart from the importance of clarifying the *Rogers* standard, "[t]he public generally has an interest in accuracy of judicial proceedings and in efficient use of government resources," such that a stay would serve the public by "conserving judicial resources, while the Ninth Circuit decides" the issue presented. *Flo & Eddie, Inc.*, No. CV-13-5693, at *4 (internal quotation marks omitted).

The *Holder* factors weigh decisively in favor of a stay. Therefore, Defendants



1    respectfully request that the Court stay the proceedings pending disposition of

2    Defendants' Motion and, if granted, through disposition of the subsequent § 1292(b)

3    petition.

4    **IV.    <u>CONCLUSION</u>**

5         For the foregoing reasons, Defendants respectfully requests that the Court

6    certify the Order for interlocutory review as to the question of whether Defendants

7    use of BMF is "as a trademark." Defendants further respectfully request a stay of

8    proceedings, as set forth above.

9

10   DATED: October 10, 2024        KILPATRICK TOWNSEND & STOCKTON LLP

11

12                                 By:    */s/Dennis L. Wilson*

13                                        DENNIS L. WILSON
                                          KEVIN M. BELL
                                          OLIVIA POPPENS

14                                 Attorneys for Defendants

15

16

17

18

19

20

21

22

23

24

25

26

27

28

